**SO ORDERED.**

**SIGNED this 08th day of January, 2010.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-50128-LMC |
| | § | |
| BENTLEY ENERGY | § | Joint Administration Requested |
| CORPORATION | § | |
| | § | |
| Debtor-in-Possession | § | CHAPTER 11 CASE |

## AGREED ORDER ON EMERGNCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 507 AND FEDERAL RULES Of BANKRUPTCY PROCEDURE 2002, 4001 AND 9014(I) AUTHORIZING USE OF CASH COLLATERAL;(II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS AND GRANTING OTHER ADEQUATE PROTECTION;(III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING A FINAL HEARING ON THE MOTION

On this ____ day of January, 2010, came on to be considered Debtors' *Emergency Motion for Interim and Final Orders Pursuant to 11 US. C. Sections 105, 361, 362, 363, and 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the Debtor's Use of Cash Collateral; (II) Granting Security Interests and Superpriority*

*Claims and Granting Adequate Protection; (III) Scheduling a Final Hearing on the Motion,* and the Court finds that the same is well taken.

1. The Debtors each filed voluntary petitions on January 7, 2010.

2. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §1408 and 1409.

3. Prior to the Petition Date, Western National Bank ("Western") made certain loans and other financial accommodations available to the Debtors (or, the "Borrower").

4. Western is currently owed approximately $6.6 million (not including interest).

5. Western has declared a default and has demanded payment.

6. The Debtors represent, stipulate, acknowledge, and agree that as of the Petition Date, the Debtors were indebted to the Pre-Petition Lender.

7. The Debtors stipulate and acknowledge that the Pre-petition Indebtedness is collateralized by security interests in accounts, real property, equipment, including titled vehicles, inventory, and receivables.

8. Much of the income of the Debtors, whatever the source, represents liquidation of pre-petition collateral (inventory). Cash on hand is subject to the lien of the secured creditor.

9. The Debtors presently know of no defect in the pre-petition liens.

10. An immediate and critical need exists for the Debtors to be permitted access to funds in order to prevent a disaster. Use of cash collateral to purchase propane and deliver it is vital to avoid immediate and irreparable harm to the Debtors' estates and the customers. The weather in the Debtors' service area is predicted to drop below freezing for

the next few days. Absent cash, the Debtors will not have funds sufficient to satisfy obligations to customers. Allowing the use of such cash collateral, therefore, is in the best interest of the Debtors' estates and will serve to preserve the value of the estates. Good cause exists for the entry of an Interim Order authorizing Debtor's use of the Cash Collateral (as that term is defined at 11 U.S.C. § 363).

11. Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors will provide adequate protection to the Pre-petition Lender in respect of the Debtors' use of cash and other collateral. The uses contemplated are set out in the Budget attached to this Motion as Exhibit "A". The use of proceeds of sales of gas is necessary to by new gas and pay delivery expenses.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED as follows:

1. Notice of this interim Motion, given the context, is appropriate and the Court orders that a copy of this Order be circulated to all creditors of each Debtor within two (2) business days of entry of the Order.

2. The Court will hold a final hearing on the Motion on January 14, 2010, at 2:00 PM at the Hipolito F. Garcia Federal Building and United States Courthouse, Alamo Plaza, 615 E. Houston Street, San Antonio, Texas.

3. The Court finds that any extension of credit or utilization of cash collateral shall result in the creation of a lien in favor of Western National Bank which is deemed to be an action taken in good faith by Western National Bank.

4. The Debtor is hereby authorized to engage in the expenditures set forth in the budget attached to its Emergency Motion, which is also attached to this Order.

5.  As adequate protection for any diminution in the value of Western's interest in the Western's Collateral caused by the use of Cash Collateral by the Debtors, Western shall have and is hereby granted valid, perfected and enforceable new, first-priority liens and security interests upon all categories of property of the Debtor, whether now existing or hereafter acquired or arising, upon which Western held prepetition liens and security interests and all proceeds, rents, products or profits thereof. The grant of the liens to Western as to property of the Debtors shall only act as adequate protection for the diminution in value caused by the Debtors' use of Cash Collateral. The security interests and liens granted to Western shall at all times be senior to the rights of the Debtors and any successor trustee in these or any subsequent proceedings under the Bankruptcy Code to the extent the Western's prepetition security interests and liens are senior to the rights of the Debtors. The security interests, liens and mortgages herein granted (i) are and shall be in addition to all security interests, liens, mortgages, and rights to set off existing in favor of Western on the Petition Date; (ii) shall be in the same priority as prepetition to the extent that the prepetition liens, security interests, and mortgages are valid, perfected, enforceable and non-avoidable; (iii) are and shall be valid, perfected, enforceable, and effective as of the Petition Date without any further action by the Debtors or Western and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents; and (iv) shall secure payment of principal as well as any interest, costs, or other charges to which Western may be entitled post-petition. Nothing in this Order shall limit Western's rights to assert post-petition liens under Section 552 of the Bankruptcy Code. Western shall not be afforded a lien in any Chapter 5 causes of action pursuant to this Order.

6. This Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the liens granted herein, effective as of the date and time of entry of this Order, without any further act and without regard to any other federal, state or local requirements of law requiring notice, filing, registration, recording, or possession of the collateral or other act to validate or perfect such security interest or lien. Nothing in this Order shall in any way restrict the scope of Western's prepetition liens, security interests, mortgages, rights of set-off or claims with respect to Western's Collateral, and all liens, security interests, and mortgages on Western's collateral shall extend to the fullest extent permitted by Section *552(b)* of the Bankruptcy Code.

7. The post-petition liens in favor of Western, subject to other and further orders of the Court, shall be prior and senior to any other security interest, interest, encumbrance, right or lien, subject only to: (i) the valid and perfected pre-petition liens and security interests of Western in Western's collateral existing as of the Petition Date; (ii) valid and perfected liens and security interests, if any, of other creditors (including creditors holding ad valorem tax claims) in any specific piece of property and proceeds that existed as of the Petition Date and that are senior and prior to any prepetition lien and security interest of Western in such property; and (iii) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

8. Nothing contained in this Order shall be deemed a finding with respect to the adequate protection (as that term is defined in Section 361 of the Bankruptcy Code) of the interest of Western. Moreover, nothing herein shall prejudice Western's rights to seek relief from the automatic stay or a dismissal of the Debtor's bankruptcy case.

IT IS LASTLY ORDERED, ADJUDGED and DECREED that the retainer received by counsel for the Debtor, in the amount of $15,000.00, which included filing fees, is also an authorized payment from cash collateral.

IT IS SO ORDERED

###

Submitted by:

R. Glen Ayers, Jr.
LANGLEY & BANACK, INC.
745 East Mulberry, Suite 900
San Antonio, Texas 78212
(210) 736-6600 [telephone]
(210) 735-6889 [facsimile]

Proposed Attorneys for Debtors-in-Possession,
Joint Administration Requested

# EXHIBIT "A"

| BUDGET | | | | EXHIBIT A |
|---|---|---|---|---|
| | | Week Ended 1/16/2010 | Week Ended 1/23/2010 | Week Ended 1/30/2010 |
| **Bentley Energy** | | | | |
| **CASH OUTFLOWS:** | | | | |
| | Insurance-Liabiltiy Capitol City | $ 26,100.00 | $ - | $ - |
| | Insurance-Liabiltiy AMC payment | - | - | - |
| | Franchise taxes | 13,565.85 | - | - |
| | | 39,665.85 | - | - |
| **Bentley Oil and Gas** | | | | |
| **CASH OUTFLOWS:** | | | | |
| | Payroll | 12,326.82 | - | 12,326.82 |
| | Insurance - health | - | - | 7,451.40 |
| | Franchise taxes | - | - | - |
| | Office Telephone - ATT | 272.04 | - | - |
| | Mobile Phones - ATT | 442.43 | - | - |
| | Centre Plaza | 4,643.00 | - | - |
| | Ikon | 329.75 | - | - |
| | Neopost | - | 151.91 | - |
| | Palmer Tech - Server | 1,324.53 | 594.93 | - |
| | Sprint | - | 543.93 | - |
| | | 19,338.57 | 1,290.77 | 19,778.22 |
| **Lone Star Propane San Antonio** | | | | |
| **CASH OUTFLOWS:** | | | | |
| | Propane estimated may need more | 100,000.00 | - | - |
| | Payroll | 22,442.29 | - | 22,442.29 |
| | Office Telephone - ATT | 951.07 | - | 900.74 |
| | Century Tel | 48.55 | - | 48.55 |
| | City of Seguin | 198.61 | - | 351.97 |
| | DCP | - | - | - |
| | Enterprise | - | - | - |
| | E.O. & I.E. Sharp Family Partnership LTD | 1,100.00 | - | 1,100.00 |
| | Eric Orme | 250.00 | - | 250.00 |
| | Gas Equipment | - | - | - |
| | GVEC | - | - | 132.10 |
| | K-Marketing | - | - | - |
| | Lane McDuff | 1,294.35 | - | - |
| | Luckey Feed Lot | 150.00 | - | 150.00 |
| | Marshall | 300.00 | - | - |
| | Marshall Propane | - | - | - |
| | Tavie Murphy Tax office | - | - | 266.55 |
| | Santex | 2,013.35 | - | 2,013.35 |
| | Sprint - Mobile | 1,067.67 | - | - |
| | Transunion | - | - | - |
| | Trimble Navigation | 106.28 | - | 106.28 |
| | Valero | 5,000.00 | - | 5,000.00 |

| BUDGET | | | | EXHIBIT A |
|---|---|---|---|---|
| | | Week Ended 1/16/2010 | Week Ended 1/23/2010 | Week Ended 1/30/2010 |
| | Waste Mgt | - | - | - |
| | Sales Tax | - | 500.00 | - |
| | Repairs | - | - | - |
| | | 134,922.17 | 500.00 | 32,761.83 |
| Sonterra Energy | | | | |
| Ctitical Due of overdue next 10 days (as of 1/7/10) | | | | |
| Due Date | Vendor | | | |
| | Valero | 2,067.93 | - | - |
| | Pedernales | 294.40 | - | - |
| | JCF | 338.72 | - | - |
| | Sprint | 673.88 | - | - |
| | At&t Long Dist | 31.00 | - | - |
| | At&t | 456.35 | - | - |
| | Time Warner | 168.96 | - | - |
| | Verizon | 75.50 | - | - |
| | At&t | 65.67 | - | - |
| | Payroll | 7,078.86 | - | 7,078.86 |
| | Propane estimated may need more | 268,800.00 | - | - |
| | Rent-San Antonio | 1,698.00 | - | - |
| | Rent Drippin Springs | 750.00 | - | - |
| | | 282,499.27 | - | 7,078.86 |
| | | | | |
| Lone Star | Next 10-15 days | | | |
| CASH OUTFLOWS: | | | | |
| | Direct Energy | 663.42 | - | - |
| | A T & T | 519.15 | - | - |
| | ADT SECURITY SERVICES | 101.97 | - | - |
| | Brownsville Communication Service | 219.86 | - | - |
| | Argus Security Systems | 95.09 | - | - |
| | Pitney Bowes Global Financial | 50.72 | - | - |
| | SPRINT | 2,161.00 | - | - |
| | Valero Marketing & Supply Co. | 10,520.48 | - | - |
| | Payroll | 22,670.72 | - | 22,670.72 |
| | Propane estimated may need more | 100,000.00 | - | - |
| | | 137,002.41 | - | 22,670.72 |
| | | | | |
| | TOTAL | $ 613,428.27 | $ 1,790.77 | $ 82,289.63 |