IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 11 |
| BENTLEY ENERGY CORPORATION, et al ) | |
| ) | Case No. 10-50128-RBK |
| Debtors-in-Possession[1] ) | |
| ) | Jointly Administered |
| ) | |

**MOTION FOR AN ORDER (A) AUTHORIZING DEBTORS TO OBTAIN INTERIM POST-PETITION FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105, 364(c), 364(d), AND 507(b); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) GRANTING OTHER RELIEF; AND (D) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001[2]**

Now comes the Debtor-in-Possession, and files this Motion for an Order (A) Authorizing Debtors to Obtain Interim Post-Petition Financing and Granting Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105, 364(c), 364(d), and 507(b); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; (C) Granting Other Relief; and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "DIP Motion"), and would respectfully show the Court as follows:

### Jurisdiction

1. On January 7, 2010, the Debtor-in-Possession ("Debtor") filed for relief under Chapter 11. The Debtors remain a debtor-in-possession pursuant to 11 U.SC. §§ 1107 and 1108 of Title 11.

2. This Court has jurisdiction over the DIP Motion under 28 U.S.C. §§ 157 and 1334. The DIP Motion is a core proceeding as that term is used at 28 U.S.C. § 157. Venue is

---

[1] In addition to Bentley Energy Corporation, Sonterra Energy Corporation is also a debtor in a related case.
[2] Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Debtor-in-Possession Loan and Security Agreement.

1

appropriate before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Further, the DIP Motion is governed by Federal Rule of Bankruptcy Procedure 4001 and Section 364 of the Bankruptcy Code.

## **Background**

3. The Debtors are in the propane energy supply business and obtain almost all of their cash flow from propane sales to their home-owner and business customers. As of January 7, 2010 (the "Petition Date") the Debtors' primary secured creditor was Western National Bank (hereinafter "Western" or the "Prepetition Lender"). Western holds a first lien against all of the Debtors' assets in the approximate amount of $6,600,000.00. The Debtors used three million dollars of the principal note to purchase Debtors' affiliate, Sonterra Energy Corporation ("Sonterra"). Sonterra is a debtor in this jointly administered proceeding.

4. As of the Petition Date, Western held three (3) notes (totaling approximately $6,600,000.00) secured by first deeds of trust and first liens pledging assets under Article 9 of the Uniform Commercial Code ("UCC").

5. The Debtors' current ad valorem tax obligation for the year ending 2009 is estimated to be in the amount of $21,000.00. The Texas Comptroller of public accounts has a priority unsecured claim in the amount of $13,565.85 for 2009 Texas margin taxes.

6. The Prepetition Lender has been accommodating to the needs of the Debtors but has now given notice of defaults and made demand for payment in full under the three notes.

7. The Debtors essentially operate as a utility. They supply propane by truck delivery to customers in Bexar, Guadalupe, Hayes, Wilson, Medina, Hidalgo, Starr, Kennedy and other Counties. Over 15,000 customers depend on the Debtors for propane for heating, cooking and hot water.

2

8. The Debtors have been placed on a "cash on delivery" basis by their suppliers.

9. The Debtors must continue to operate. They must provide propane.

10. The Debtors have procured a commitment for debtor-in-possession financing ("DIP Financing") from AmeriGas Propane, Inc. ("AmeriGas"). The amount of the DIP Financing, which will be in the form of a line of credit, is to be in an amount not to exceed $750,000.00 (the "DIP Facility").

11. The other terms of the DIP Financing are as set forth in the Propane Supply Agreement (attached hereto as Exhibit 1) and the Debtor-in-Possession Loan and Security Agreement (attached hereto as Exhibit 2), together with all other agreements, documents and instruments to be executed or delivered in connection therewith (collectively, the "Propane Supply Agreement Documents").

12. Crucial terms include, however, that AmeriGas be granted security interests on all assets and be granted superpriority administrative expense status, pursuant to the Propane Supply Agreement Document.

## RELIEF REQUESTED

13. Debtors request the entry of an order in the proposed form attached hereto as Exhibit 3.

## AUTHORITIES AND ARGUMENT

A. **Debtor-in-Possession Financing**

14. Senior Lien on Collateral of Existing Lenders

a. Section 364(d) of the Bankruptcy Code provides that a debtor may obtain post-petition financing by granting a lien on property of the estate that is senior or equal to liens

3

that already exist on such property, so long as the debtor provides adequate protection of the previous lienholders' interest in such property. *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994)(debtor must provide adequate protection to pre-petition secured creditor in order to obtain post-petition super priority financing); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987)(debtor must establish that the credit transaction is necessary to preserve the estate and the terms of the transaction are fair and reasonable). The Prepetition Lender consents to the DIP Facility and the super priority liens contemplated by it.

    b.    Section 364(d) of the Bankruptcy Code provides:

> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if —
>
> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

    c.    The Debtors satisfy the requirements of section 364(d) of the Bankruptcy Code as the Debtors are unable to obtain credit otherwise. The Prepetition Lender has also consented to the DIP Facility, and the proposed financing is in the best interest of the estates. The Debtors seek to grant a senior lien upon the collateral of the Prepetition Lenders. Debtors seek authority that the liens granted to the DIP Lender will be senior in priority and thus "Prime" any and all existing liens. Any other parties that may have a lien on other property of the estates are not affected by the interim request for a senior lien which is to be granted to the DIP Lender. Furthermore, as will be demonstrated below, the Prepetition Lender will be provided additional adequate protection during both the Interim Period and the entirety of the Case by virtue of the Debtors' ability to better protect and even to enhance the value of the Prepetition Lender's

4

collateral.

B. **Debtors are Unable to Obtain Comparable Alternative Credit**

15. In the weeks leading up to the Petition Date, the Debtors undertook substantial negotiations with different potential debtor-in-possession financing lenders, including the Prepetition Lender. Although the Debtors attempted to reach favorable term sheets with each potential lender, they were unable to develop agreements comparable to the proposed DIP Facility in the time available.

C. **Prepetition Lenders have agreed to the DIP Facility**

16. The Prepetition Lender has agreed to the DIP Facility.

17. Additionally, the Prepetition Lender is adequately protected under the proposed DIP Facility (and previously have consented to the use of cash collateral) by the maintenance and potential increase in the value of its collateral, which will flow directly from the use of the DIP Facility funds. In *In re 495 Central Park Avenue Corp.*, the court considered whether the debtor could obtain debtor-in-possession financing under section 364(d) by granting a super priority security interest over the objections of existing secured parties. *In re 495 Central Park Avenue Corp.*, 136 B.R. 626 (Bankr. S.D.N.Y. 1992). The funds were to be used to improve the Debtors' primary asset, certain real property. *Id.* The court was presented evidence that the improvements made to the property would increase its value. *Id.* at 628-630. The court found that there was "substantial evidence that both prongs of 11 U.S.C. § 364(d) have been satisfied." *Id.* at 630. Specifically, the court found that the "broad and flexible definition" of adequate protection was satisfied. *Id.* at 631. The court stated that it "must consider whether the value of

5
014099.00001/21859438v.2

the Debtors' property will increase as a result of the renovations funded by the proposed financing." *Id.* at 631. The court found that "there is no question that the property would be improved by the proposed renovations and that an increase in value will result." *Id.* at 631.

18. Just as in *495 Central Park,* the Debtors propose to utilize the DIP Facility to improve the value of its real property assets. In part, the DIP Facility will be used to maintain and retain the value of the company's assets as a going concern. Without the use of the DIP Facility, the Debtors will not be able to maintain much less improve its assets. Just as in *495 Central Park,* "a substitution occurs in that the money spent for improvements will be transferred into value. This value will serve as adequate protection" for the existing secured lender. *Id.* at 631. Without the expenditure of the funds, the value of any such collateral will be sacrificed. *See also, In re Plabell Rubber Products, Inc.* 137 B.R. 897 (Bankr. N.D. Ohio 1992) (stating that "an increase in the value of the collateral generated by the improvements resulting from the super priority financing could constitute adequate protection"); *In re Yellowstone Mountain Club, LLC,* 2008 WL 5875547 (Bankr. D. Mont. Dec. 17, 2008) (finding adequate protection existed for primed secured party, because it preserved the debtor's going concern value).

19. In addition to the adequate protection discussed in above, the Debtors will also provide continued adequate protection in the form of payments of interest at the contract (non-default rate) to the Prepetition Lender and reimbursement of fees and expenses, post-petition.

20. As it is unlikely that the Prepetition Lender is fully secured, much less have an equity cushion, in addition to the adequate protection offered above, the Prepetition Lender also is being offered replacement liens on all assets of the Debtors to the extent the Prepetition Lender is able to establish that it has suffered a diminution in value of its interest in the Pre-Petition

Collateral.

21.  *NOTICE*: The proposed DIP Lender, AmeriGas, has advised the Debtors that it may make an offer to purchase some or all of the Debtors' assets.

**D.  The Proposed DIP Facility is in the Best Interest of the Debtors' Estate and Creditors**

22.  The proposed DIP Facility is required to preserve and maintain the Debtors' going concern value and is, therefore, in the best interest of the Debtors' estate and creditors. The availability of credit under the DIP Facility is necessary to provide working capital for the Debtors to continue to operate its business and afford the Debtors' vendors and customers the necessary confidence to continue ongoing relationships with the Debtor, including the extension of credit terms for the payment of goods and services. The DIP Facility will be viewed favorably by the Debtors' employees, minimize disruption to the Debtors' business and ongoing operations, and avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

23.  In the Debtors' business judgment, the DIP Facility represents the best financing option to effectuate these purposes and advance the Debtors' reorganization efforts. The terms of the DIP Facility neither (a) tilt the conduct of these Cases and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits.

24.  Likewise, the various fees and charges required under the DIP Facility are reasonable and appropriate under the circumstances. Courts routinely have authorized similar lender incentives that extend beyond the specific liens and rights specified in Bankruptcy Code

7

section 364. *See R. T.C. v. Official Unsecured Creditors Committee* (*In re Defender Drug Stores, Inc.*), 145 B.R. 312, 316-318 (B.A.P. 9th Cir. 1992) (approving financing facility pursuant to section 364 that included a lender "enhancement fee").

25. Although, since the Prepetition Lender has agreed to the DIP Financing and the provisions for superior liens to the DIP Lender there should be no need for further findings by the Court. However, the courts in the Western District of Texas previously have granted the relief requested by the Debtors under section 364(d) in other cases. See *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455-rbk (Bankr. W.D. Tex (San Antonio) March 5, 2009) (Docket No. 229); *In re Physicians Specialty of El Paso East, L.P.*, Case No. 07-30633-lmc (Bankr. W.D. Tex. (El Paso) Oct. 24, 2007) (Docket No. 238).

E. **Additional Liens on Unencumbered Assets or Second Liens**

26. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may also in the exercise of its business judgment, incur secured debts on the unencumbered assets of the debtor or junior liens on encumbered assets, if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates. *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 448-9 (Bankr. D. Colo. 1985)(authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); *In re Ames Dept. Stores*, 115 B.R. at 38 (with respect to post petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.")

27. Section 364(c) of the Bankruptcy Code provides:

8

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt-

> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

28. The Debtors have been unable to procure the required funds in the form of unsecured credit or unsecured debt with an administrative priority. On an interim basis, the DIP Lender will not have a lien upon the proceeds from causes of action arising under sections 544, 545, 547 through 551 and 553. The Debtors seek authority to grant such a lien pursuant to a final order on the Motion. Accordingly, under the circumstances, the Debtors should be authorized to enter into a secured financing arrangement under section 364(c) of the Bankruptcy Code.

29. Having determined that financing was available only under sections 364(c) and (d) of the Bankruptcy Code, the Debtors negotiated the DIP Facility at arm's length and pursuant to their business judgment, which is to be accorded great weight so long as it does not run afoul of the provision of and policies underlying the Bankruptcy Code. *See, e.g., Bray v. Shenandoah Federal Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986)(approving debtor-in-possession financing necessary to sustain seasonal business); *In re Ames Dep't Stores*, 115 B.R. at 40 (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties.").

30. In satisfying the standards of section 364(c) and (d) of the Bankruptcy Code, a debtor need not seek credit from every available source, but should make a reasonable effort to

014099.00001/21859438v.2

seek other sources of credit available of the type set forth in sections 364(a) and (b) of the Bankruptcy Code. *In re Snowshoe Co.*, 789 F.2d at 1088 ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Instead, the debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). In *In re Sky Valley, Inc.*, 100 B.R. 107, 112-13 (Bankr. N.D. Ga. 1988), the Court stated that "it would be unrealistic and unnecessary to require Debtors to conduct such an exhaustive search for financing" where the business suffered from financial stress, had little or no unencumbered property, and the primary property was subject to numerous liens, and thus the debtor's approach of only four lenders was sufficient under such circumstances.

31. The DIP Facility is clearly for the benefit of the Debtors' estate and creditors. As set forth above, it is critical to maintaining the Debtors' operations and, thus, preserving and enhancing the Debtors' going concern value. As evidenced by the Budget (attached hereto as Exhibit 4), use of cash collateral alone is insufficient to pay even the normal operating expenses after the adequate protection payments are made to the Prepetition Lender. With the additional liquidity provided by the DIP Facility, the Debtors will be able to obtain goods and services in connection with maintaining ongoing operations on normal credit terms, thereby permitting it to generate revenues, pay its employees, and operate its businesses for the benefit of all parties in interest.

32. The terms and conditions of the DIP Facility are fair and reasonable and were negotiated by the parties in good faith and at an arm's length. Accordingly, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP

Facility.

33. The courts in the Western District of Texas have previously granted the relief requested by the Debtors under section 364(c) in other cases. *See In re Spectrum Jungle Labs Corp.*, Case No. 09-50455-rbk (Bankr. W.D. Tex (San Antonio) March 5, 2009) (Docket No. 229); *In re Physicians Specialty of El Paso East, L.P.*, Case No. 07-30633-lmc (Bankr. W.D. Tex. (El Paso) Oct. 24, 2007) (Docket No. 238); *In re LUH Resort, Ltd.*, Case No. 07-70143-cag (Bankr. W.D. Tex (Midland) Oct. 10, 2007) (Docket No. 202); *In re Lothian Oil Inc.*, Case No. 07-70121-rbk (Bankr. W.D. Tex (Midland) July 17, 2007) (Docket No. 176).

**F.     Approval of Modification of the Automatic Stay**

34. Bankruptcy Code section 362 provides for an automatic stay upon the filing of a bankruptcy petition. The DIP Facility contemplates that the DIP Lender shall have a first priority lien on the collateral of the Prepetition Lender and on any unencumbered assets of the Debtor. To the extent necessary, the DIP Lender should be granted relief from the automatic stay to perfect such interests.

35. Stay modification provisions of this kind are ordinary and standard features of post-petition debtor-in-possession financing facilities and, in the Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

**G.     The Interim Approval Should Be Granted**

36. As mentioned above, Bankruptcy Rule 4001(c) provides that a final hearing on a

motion to obtain credit pursuant to section 364 may not be commenced earlier than 15 days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize obtaining credit to the extent necessary to avoid immediate and irreparable harm to the Debtors' estate.

37. On an interim basis, the Debtors request that this Court authorize the Debtors to purchase propane inventory on credit and use up the total contemplated amount of the proposed DIP Facility. The Debtors must have the interim relief requested in order to operate its business and protect its assets and the value of its assets. Absent the interim relief, the Debtors will be unable to continue operations.

38. The Debtors request, pursuant to Bankruptcy Rule 4001(c), that the Court authorize the Debtor, from and after the entry of the Interim Order until an order is entered following the Final Hearing on the Motion, to obtain credit under the DIP Facility. This will enable the Debtors to maintain ongoing operations and the means by which it may avoid immediate and irreparable harm and prejudice to its estate and all parties-in-interest, pending the Final Hearing.

WHEREFORE, PREMISES CONSIDERED, the Debtors move the Court for entry of the attached Interim Order and for a Final Order, and for such other relief as the Court deems just and equitable.

014099.00001/21859438v.2

Respectfully submitted,

LANGLEY & BANACK, INCORPORATED
745 E. Mulberry, Suite 900
San Antonio, TX 78212
Telephone: (210) 736-6600
Facsimile: (210) 735-6889

By: _____
    R. GLEN AYERS, JR.
    State Bar No. 01467500

Attorneys for Bentley Energy Corporation, et al.,
Jointly Administered Debtors-in-Possession

014099.00001/21859438v.2

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been mailed by U.S. First Class Mail, postage prepaid, to the parties listed on the attached service list on this the ____ day of March, 2010.

_____
R. GLEN AYERS, JR.

| | | |
|---|---|---|
| Bentley Energy Corporation<br>45 NE Loop 410, Suite<br>San Antonio, Texas 78216 | Sonterra Energy Corporation<br>45 NE Loop 410, Suite<br>San Antonio, Texas 78216 | US. Trustee's Office<br>P.O. Box 1539<br>San Antonio, Texas 78295-1539 |
| Michael Flume<br>Flume Law Firm, LLP<br>1020 N.E. Loop 410, Suite 200<br>San Antonio, TX 78209<br>*Counsel for Western National Bank* | Internal Revenue Service<br>Special Procedures Staff<br>300 E. 8th St., STOP 5022 AUS<br>Austin, TX 78701 | Joel H. Klein<br>Deventhia Nichols-Thompson<br>Joel H. Klein & Associates<br>6800 Park Ten Blvd., Suite 364-S<br>San Antonio, TX 78213 |
| Robin Russell, Esq.<br>Andrews & Kurth LLP<br>600 Travis, Suite 4200<br>Houston, TX 77002-3090 | Kell C. Mercer<br>Brown McCarroll, LLP<br>111 Congress Ave., Ste. 1400<br>Austin, Texas 78701 | Lone Star Propane, SA<br>45 NE Loop 410, Suite 495<br>San Antonio, TX 78216 |
| Ferrellgas<br>26585 Hwy 281 North<br>San Antonio, TX 78260 | Direct Propane Services<br>PO Box 619<br>Manor, TX 78653-0619 | Landmark American Insurance Company<br>c/o Patricia Kalmans<br>Habbeshaw Kalmans PC<br>900 IH-10 W, Suite 460<br>San Antonio, TX 78230 |
| CIT Technology Financial Services, Inc.<br>PO Box 550599<br>Jacksonville, FL 32255-0599 | RSUI Group, Inc.<br>c/o Roy Anselmo<br>Euler Hermes UMA<br>600 South 7th Street<br>Louisville, KY 40201-1672 | Malone & Bailey<br>10350 Richmond Ave., Ste. 800<br>Houston, TX 77042 |
| Cordillera Ranch<br>808 HWY 46E<br>Boerne, TX 78006 | Property Tax Appeal & Service<br>5906 Fenway Road<br>Corpus Christi, TX 78466-0162 | Texas State Comptroller<br>PO B0x 149348<br>Austin, TX 78714-9348 |
| Card Services<br>P.O. Box 569100<br>Dallas, TX 75356-9100 | M&S Engineering, Ltd.<br>P.O. Box 970<br>Spring Branch, TX 78070 | Lone Star Paving Co.<br>PO Box 91862<br>Austin, TX 78709-1862 |
| Gajeske, Inc.<br>2929 Antoine Drive<br>Houston, TX 77092-7045 | Hays County Tax Office<br>Ruth Clayton<br>102 LBJ Courthouse Annex<br>San Marcos, TX 78666 | Valero Marketing & Supply Co.<br>PO Box 300<br>Amarillo, TX 79105-0300 |
| Strasburger & Price, LLP<br>Attorneys and Counselors<br>PO Box 849037<br>Dallas, TX 75284-9037 | Business Card<br>PO Box 15710<br>Wilmington, DE 79886-5710 | Kendall Appraisal District<br>PO Box 788<br>Boerne, TX 78006-0788 |
| Continental Utility Solutions, Inc.<br>PO Box 1515<br>Jonesboro, AR 72403-1515 | Enterprise Products<br>PO Box 972866<br>Dallas, TX 75397-2866 | Pickett Systems<br>PO Box 27, Dept. 00<br>Houston, TX 77001 |

Marshall Propane
PO Box 200186
San Antonio, TX 78220

Cameron County Tax Assessor
Collector
PO Box 952
Brownsville, TX 78522

Rural Computer Consultants
211 S. 10th Street
PO Box 197
Bird Island, MN 55310

Gas Equipment Company
PO Box 29242
Dallas, TX 75229-0242

K Marketing, Inc.
PO Box 2030
Canyon Lake, TX 78133

American Solutions for Business
MW # 7794, PO Box 1450
Minneapolis, MN 55485-7794

Aetna
PO Box 894913
Los Angeles, CA 90189

~~Yellow Book~~
~~PO Box 6448~~
~~Carol Stream, IL 60197~~

Sprint
PO Box 650075
Dallas, TX 75266-0075

Texas Propane Marketing
8408 N IH-35
Austin, TX 78753

David G. Aelvoet
Linebarger Goggan Blair & Sampson
711 Navarro, Suite 300
San Antonio, TX 78205

Patricia B. Tomasco, Esq.
Munsch Hardt Kopf & Harr, PC
600 Congress Ave., Suite 2900
Austin, TX 78701

Diane W. Sanders
Linebarger Goggan Blair & Sampson
2700 Via Fortuna Dr., Suite 400
Austin, TX 78760

Marcy E. Kurtz
Bracewell & Giulliani, LLP
711 Louisiana Street, Ste. 2300
Houston, TX 77002

Eric Barbosa
Bracewell & Giuillani, LLP
106 S. St. Mary's Street, Suite 800
San Antonio, TX 78205

Robin Russell
Charles Yancy
Andrews Kurth, LLP
600 Travis Street, Suite 4200
Houston, TX 77002

Andrew K. Rozell
323 East Jackson Street
Harlingen, TX 78550

John T. Banks
Perdue Brandon Fielder Collins & Mott
3301 Northland Drive, Suite 505
Austin, TX 78731

Lee Gordon
McCreary, Veselka Bragg & Allen, PC
PO Box 1269
Round Rock, TX 78680

Garnett T. Causey, Jr.
5126 Bouganvillea Street
Harlingen, TX 78552

Ted Vega
PO Box 310
Rio Hondo, TX 78583

Bobby Cantrell
5635 La Estrella Circle
Harlingen, TX 78552