# **EXHIBIT 1**

PROPANE SUPPLY AGREEMENT

# PROPANE SUPPLY AGREEMENT

THIS PROPANE SUPPLY AGREEMENT ("Agreement"), made this [___] day of February, 2010 by and among **AMERIGAS PROPANE, L.P.**, a Delaware limited partnership, having a principal place of business at 460 North Gulph Road, King of Prussia, Pennsylvania 19406 ("AmeriGas") and **BENTLEY ENERGY CORPORATION**, a [_____] corporation, having a principal place of business at [address] and currently a Debtor-in-Possession in the United States Bankruptcy Court for the Western District of Texas San Antonio Division ("Bentley") and **SONTERRA ENERGY CORPORATION**, a [_____] corporation, having a principal place of business at [address] and currently a Debtor-in-Possession in the United States Bankruptcy Court for the Western District of Texas San Antonio Division ("Sonterra") (Debtors and Sonterra collectively referred to herein as the "Debtors"). Terms used herein but not otherwise defined shall have the meaning ascribed to them in Title 11 of the United States Code (the "Bankruptcy Code").

## Introduction

WHEREAS, Debtors filed, on January 7, 2010, a voluntary Petition for Relief under Chapter 11 in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division ("Bankruptcy Court") (the "Bankruptcy Proceeding");

WHEREAS, AmeriGas is in the business of selling propane and operates a district office at [_____];

WHEREAS, Debtors wish to purchase but do not have sufficient financing to purchase propane from AmeriGas, and further wish to sell their assets in a Bankruptcy Section 363 sale and enter into a stalking horse purchase agreement with AmeriGas;

WHEREAS, AmeriGas wishes to sell propane to Debtors pursuant to the terms of this Agreement, the security agreement between AmeriGas and the Debtors, dated as of February [__], 2010 (the "Security Agreement"), and such other collateral documents as AmeriGas shall require (the "Collateral Documents"), with liens granted by the order described below, and subject to due diligence and the negotiation of an acceptable agreement to become the stalking horse for the Debtors' assets;

WHEREAS, AmeriGas, as a condition to selling the propane, requires the Debtors to obtain an order from the Bankruptcy Court authorizing Debtors to obtain post-petition financing and granting first lien security interests and superpriority administrative expense status pursuant to Sections 105, 364(C), 364(D), and 507(B) of the Bankruptcy Code providing AmeriGas with a first lien on all of the Debtors' assets (the "Order"); and

WHEREAS, subject to the conditions for the extension of credit under the Security Agreement, AmeriGas will extend up to [$750,000.00] in propane on a revolving basis with payment for all propane sold under this Agreement due and payable, without interest, within ten (10) days of receipt of invoice and, with interest, at the rate of twelve percent (12%) per annum,

- 1 -

014099.00001/11974482v.5

between ten (10) days and thirty (30) days of receipt of invoice, with all payments required thirty (30) days after receipt of invoice;

NOW, THEREFORE, in consideration of the mutual covenants, representations and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

1. <u>Term</u>. The term of this Agreement will be ninety (90) days beginning on March [__], 2010, and ending on May [__], 2010 (the "<u>Term</u>"). In addition, this Agreement may be terminated at any time pursuant to the provisions of Paragraphs 6, below.

2. <u>Purchase and Supply of Propane</u>. AmeriGas agrees to supply Debtors with propane and Debtors agrees to purchase its requirements of propane from AmeriGas.

3. <u>Price for Propane</u>. The price for propane will be the lower of posting or a fixed differential compared to the Mont Belvieu hub price, plus freight and all other actual applicable charges, plus $.0025 per gallon.

4. <u>Payment</u>. Payment for all propane sold will be due and payable, without interest, within ten (10) days of receipt of invoice and, with interest, more than ten (10) days of receipt of invoice. All invoices must be paid within thirty (30) days of receipt of invoice. Interest will accrue at the rate of twelve percent (12%) per annum on the basis of a 365 day year.

5. <u>Conditions Precedent</u>. The commencement of the Term of this Agreement and the obligations of Debtors and AmeriGas under this Agreement are subject to the satisfaction of the following *conditions precedent*:

(a) The Order shall be entered and no appeal shall have been taken from the Order;

(b) Debtors shall have executed this Agreement, the Security Agreement and the Collateral Documents, if any; and

(c) the Debtors shall have provided AmeriGas with access to commence its due diligence.

6. <u>Events of Default</u>. This Agreement may be terminated by AmeriGas upon the occurrence of any of the following events of default:

(a) Debtors' failure to fulfill or conform to any of the terms or conditions of this Agreement, which shall have continued for at least ten (10) days after notice thereof to the Debtors; and

(b) Debtors' breach of the Security Agreement, which breach is not cured within the applicable grace period;

- 2 -

014099.00001/11974482v.5

(c) Debtor's breach of the Collateral Documents, which breach is not cured within the applicable grace period;

(d) any representation or warranty made or deemed made by the Debtors in this Agreement shall prove to have been misleading in any material respect on the date when made or deemed to have been made; or

(e) a trustee is appointed to the Bankruptcy Proceeding.

7. Effect of Expiration or Termination. Upon the expiration or any termination of this Agreement, howsoever caused, Debtors shall pay AmeriGas in full, within fifteen (15) days after the effective date of termination or expiration of this Agreement, all payments, charges and amounts due AmeriGas under this Agreement, the Security Agreement, or the Collateral Documents, including charges for propane as well as any interest costs or expenses. Any and all obligations of AmeriGas and Debtors that expressly or by nature survive the expiration or termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding its expiration or termination until such time as such obligations are satisfied in full or by nature expire.

8. Indemnity. (a) Debtors shall indemnify, defend and hold harmless AmeriGas, its predecessors, parents, subsidiaries, affiliates, successors and assigns and their respective officers, directors, employees and agents of and from all claims, demands, suits and liabilities for injuries (including death) or damages, either to persons or property resulting from, arising out of or in any way related to Debtors' handling of the propane after AmeriGas' safe delivery of the propane to Debtors' storage tanks.

(b) AmeriGas shall indemnify, defend and hold harmless Debtors, its predecessors, parents, subsidiaries, affiliates, successors and assigns and their respective officers, directors, employees and agents of and from all claims, demands, suits and liabilities for injuries (including death) or damages, either to persons or property resulting from, arising out of or in any way related to AmeriGas' handling of the propane prior to the safe delivery of the propane by AmeriGas to Debtors' storage tanks.

9. Insurance. Debtors will maintain comprehensive general liability insurance in an amount of not less than $1,000,000 combined single limits. Debtors shall furnish proof of such insurance to AmeriGas. Debtors may not reduce, cancel or otherwise change the insurance coverage thereunder without providing AmeriGas thirty (30) days' written notice of such reduction, cancellation or other change. The coverage under Debtors policies of insurance shall be primary to any other insurance maintained by AmeriGas that may be in effect and shall name AmeriGas as an additional insured. The failure by AmeriGas to request proof of such insurance or of its being named as an additional insured shall not be constitute a waiver of Debtors obligation to maintain such insurance.

- 3 -

014099.00001/11974482v.5

10. Successors and Assigns. Neither this Agreement, nor any of the rights or obligations hereunder, shall be transferred or assigned by Debtors without prior written consent of AmeriGas. Subject to the above, this Agreement shall inure to the benefit of and be binding upon the respective successors and permitted assigns of the Parties.

11. Attorney's Fees. In the event that either party is required to file suit to enforce any of the terms and conditions of this Agreement, the non-prevailing party shall pay the prevailing party's reasonable costs, including attorney's fees, to the maximum extent permitted by law.

12. Force Majeure. AmeriGas shall be excused from delay in performance or nonperformance (partial or complete) if AmeriGas is unable to meet the demand for its propane at AmeriGas' normal and usual source points for supplying Debtors (regardless of whether or not AmeriGas may have been forced to divert certain supplies from such source points in order to alleviate shortages at other distribution points), or in the event of failure or delay in delivery due to exhaustion, reduction or unavailability of product. AmeriGas also shall be excused from delay or nonperformance in the event of any condition beyond its reasonable control, including without limitation, Acts of God; labor difficulties; fire; explosion; flood; nuclear accident; insurrection; civil disobedience; riots; war conditions or hostilities in this or any other country; and compliance with any governmental order, regulation, rule, recommendation, request or allocation program (whether voluntary or involuntary) affecting directly or indirectly AmeriGas' ability to perform hereunder. In the event of any of the occurrences, contingencies or conditions set forth above, AmeriGas shall have the right to allocate its supply of product for sale among all of its customers, which may or may not include Debtors, in any manner which AmeriGas determines in its sole discretion, to be reasonable under the circumstances, and Debtors shall have no claim against AmeriGas for, nor shall Debtors hold AmeriGas responsible in any manner for any losses or damages (including, but not limited to, special, incidental or consequential damages) which Debtors may claim or incur as a result of, any such delay or nonperformance or any such allocation by AmeriGas. In the event that AmeriGas has declared a force majeure, Debtors may purchase propane from a third party until such time as the force majeure has ended without penalty under this Agreement.

13. Disclaimer Of Warranties. AMERIGAS MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PROPANE SUPPLIED PURSUANT TO THIS AGREEMENT, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

14. Limitation Of Damages. UNDER NO CIRCUMSTANCES SHALL AMERIGAS BE LIABLE HEREUNDER FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, INCLUDING WITHOUT LIMITATION BUSINESS INTERRUPTION DAMAGES AND DAMAGES FOR LOST PROFITS. THIS LIMITATION WILL APPLY WITHOUT REGARD TO WHETHER A CLAIM OR REMEDY IS SOUGHT IN CONTRACT, TORT (INCLUDING STRICT LIABILITY) OR OTHERWISE.

15. Corporate Authority. Intentionally Omitted.

16. **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior and contemporaneous agreements, representations and understandings, either oral or written, relating in any way to the subject of this Agreement. This Agreement may not be modified, supplemented or amended in any way except in a written document executed by all Parties.

17. **Waiver or Estoppel**. The failure of either party to insist on strict performance of this Agreement or any provision of this Agreement shall not constitute a waiver thereof or estop any party from asserting the right to require such performance in the future, nor shall a waiver in any one instance constitute a waiver with respect to a later breach of the same or any other provision.

18. **Governing Law**. This Agreement shall be interpreted, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania. The language of this Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be strictly construed for or against either party.

19. **Severability**. If any provision of this Agreement or its application to any person or circumstance is declared to be invalid or unenforceable to any extent, then the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected and shall be enforceable to the extent permitted by law.

IN WITNESS WHEREOF, the Parties have hereto caused this Agreement to be duly executed as of the date first above written.

**DEBTORS ENERGY CORPORATION**  **AMERIGAS PROPANE, L.P.**
By: AmeriGas Propane, Inc.
Its General Partner

By: _____  By: _____
Name: _____  Name: _____
Title: _____  Title: _____

**SONTERRA ENERGY CORPORATION**

By: _____
Name: _____
Title: _____